# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION

PRISCILLA SALAZAR, A MINOR,
BY AND THROUGH IRMA GARCIA,
HER LEGAL CUSTODIAN AND
NATURAL GRANDMOTHER,                                                    PLAINTIFF,

VS.                                                    CIVIL ACTION NO. 2:06CV142-P-A

OFFICER DONALD BARR, IN HIS
OFFICIAL AND INDIVIDUAL
CAPACITIES,                                                            DEFENDANT.

## MEMORANDUM OPINION

This matter comes before the court upon Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [7-1]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

According to the Complaint, on or about August 29, 2003 Irma Garcia, the natural grandmother of Priscilla Salazar, took Priscilla, age ten, to the police department in Southaven, Mississippi. Upon arrival Ms. Garcia reported to Officer Donald Barr that Priscilla was being abused and repeatedly raped by Priscilla's mother's live-in boyfriend, Jesus Garcia. According to Ms. Garcia, Officer Barr refused to report the abuse to the Mississippi Department of Human Services as required by Miss. Code Ann. § 43-21-353(1), failed to investigate the abuse, and failed to file a preliminary report with the District Attorney. In 2005, at approximately twelve years of age, Priscilla became pregnant by Jesus Garcia. After an investigation, Jesus Garcia was indicted, charged, and convicted of felony child abuse.

1

Priscilla, by and through her grandmother, filed a Complaint on August 29, 2006 in which

she argues that Officer Barr in his official and individual capacities is liable pursuant to 42 U.S.C.

§ 1983 for "Defendant's willful refusal to follow the Mississippi state law, Section 43-21-353(1)

(M.C.A.), that created a special relationship between the Plaintiff and the state of Mississippi

violated Plaintiff's Fourteenth Amendment due process rights." Complaint, ¶ VI. The plaintiff prays

for actual and punitive damages in an amount to be determined by a jury.

The defendant filed the instant motion to dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1) (lack of jurisdiction over the subject matter) and 12(b)(6) (failure to state a claim

for which relief can be granted) on the grounds that (1) the plaintiff had no "property" interest in

Officer Barr's failure to comply with § 43-21-353's mandatory reporting law, thereby creating no due

process violation supporting a § 1983 claim; and (2) any state remedy is barred for failure to comply

with the Mississippi Tort Claims Act's prerequisites. Alternatively, the defendant moves for

summary judgment.

## II. DISCUSSION

### A. Motion to Dismiss Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the

statutory or constitutional power to adjudicate the case." *John Corp. v. City of Houston*, 214 F.3d

573, 576 (5th Cir. 2000). With regard to motions to dismiss under Rule 12(b)(1), the Fifth Circuit

has held:

> "[W]here issues of fact are central both to subject matter jurisdiction and the claim
> on the merits, we have held that the trial court must assume jurisdiction and proceed
> to the merits. In circumstances where "the defendant's challenge to the court's
> jurisdiction is also a challenge to the existence of a federal cause of action, the proper
> course of action for the district court ... is to find that jurisdiction exists and deal with

the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56."

*Montez v. Department of the Navy*, 392 F.3d 147, 150 (5ᵗʰ Cir. 2004) (internal citation omitted).

Since the defendant's challenge to this court's jurisdiction is also a challenge to a federal cause of action under § 1983, the court concludes that the instant motion is more properly resolved as one under Rule 12(b)(6) for failure to state a claim.

## B. Motion to Dismiss Under Rule 12(b)(6)

The test usually applied to determine the sufficiency of the complaint for the purposes of a Rule 12(b)(6) motion to dismiss was set out in *Conley v. Gibson*, 355 U.S. 41 (1957). Justice Black, writing for the majority, wrote:

> [I]n appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Id.* at 45-46; *Kaltenbach v. Richards*, 464 F.3d 524, 526 (5ᵗʰ Cir. 2006). When reviewing a motion to dismiss under Rule 12(b)(6), the court should take as true the well-pleaded factual allegations in the complaint. *Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 463 F.3d 378, 381 (5ᵗʰ Cir. 2006).

Regarding the defendant's alternative motion for summary judgment, the court concludes that since matters outside of the pleadings were not presented in support of their Rule 12 motion to dismiss, it is unnecessary to conduct a Rule 56 inquiry. Fed R. Civ. P. 12(b).

**C. Whether the Plaintiff Has a "Property Interest" in Enforcement of Section 43-21-353**

1. "Special Relationship" Theory

  As discussed above, the plaintiff in paragraph VI of her Complaint wrote that "Defendant's willful refusal to follow the Mississippi state law, Section 43-21-353(1) (M.C.A.) ... created a special relationship between the Plaintiff and the state of Mississippi violated Plaintiff's Fourteenth Amendment due process rights."

  Such a position was soundly rejected by the U.S. Supreme Court in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989). In that case, the petitioner was a boy whose father had beaten him severely, causing permanent injuries. Despite receiving several complaints that the boy was being abused by his father and having reason to believe this was true, the Department of Social Services did not remove the boy from his father's custody. The complaint alleged that the state officials deprived the boy of his liberty without due process of law in violation of his Fourteenth Amendment rights. The Court concluded that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197. The Court also rejected the petitioner's arguments that the State created a duty out of a "special relationship" with the boy by initially investigating the abuse by concluding:

> While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*DeShaney*, 489 U.S. at 201. Thus, the Court in *DeShaney* held that the boy possessed no substantive

due process right to have social services protect him against his father's abuse.

This leaves the question in this case of whether Officer Barr's failure to comply with § 43-21-353(1)'s child abuse reporting requirements violated the plaintiff's procedural, as opposed to substantive, due process rights thereby creating a cause of action against Officer Barr pursuant to § 1983.

2. The Child Abuse Reporting Statute

Mississippi Code Annotated § 43-21-353(1) provides in pertinent part that:

> Any ... law enforcement officer ... or any other person having reasonable cause to suspect that a child is a neglected child or an abused child, shall cause an oral report to be made immediately by telephone or otherwise and followed as soon thereafter as possible by a report in writing to the Department of Human Services, and immediately a referral shall be made by the Department of Human Services to the youth court intake unit, which unit shall promptly comply with Section 43- 21-357. Where appropriate, the Department of Human Services shall additionally make a referral to the youth court prosecutor. Upon receiving a report that a child has been sexually abused, or burned, tortured, mutilated or otherwise physically abused in such a manner as to cause serious bodily harm, or upon receiving any report of abuse that would be a felony under state or federal law, the Department of Human Services shall immediately notify the law enforcement agency in whose jurisdiction the abuse occurred and shall notify the appropriate prosecutor within forty-eight (48) hours, and the Department of Human Services shall have the duty to provide the law enforcement agency all the names and facts known at the time of the report; this duty shall be of a continuing nature. The law enforcement agency and the Department of Human Services shall investigate the reported abuse immediately and shall file a preliminary report with the appropriate prosecutor's office within twenty-four (24) hours and shall make additional reports as new or additional information or evidence becomes available. The Department of Human Services shall advise the clerk of the youth court and the youth court prosecutor of all cases of abuse reported to the department within seventy-two (72) hours and shall update such report as information becomes available.

The duties imposed by 43-21-353 upon the law enforcement officer or other person having reasonable cause to suspect a child is abused is to immediately inform DHS by phone and to follow up with a written report. The remainder of the investigatory duties triggered by the oral and written

5

reports of child abuse are imposed upon DHS, the Youth Court intake unit, the relevant law enforcement agency, and the Youth Court prosecutor.

Section 43-21-353(7) provides: "Anyone who willfully violates any provision of this section shall be, upon being found guilty, punished by a fine not to exceed Five Thousand Dollar ($5,000.00), or by imprisonment in jail not to exceed one (1) year, or both."

Assuming arguendo that Officer Barr had reasonable cause to suspect that Priscilla was an abused child, Barr had a duty created by § 43-21-353(1) to report his suspicions orally and in writing to DHS. Furthermore, as a representative of the relevant law enforcement agency, § 43-21-353(1) required him, or at least someone at the Southaven Police Department, to investigate the alleged child abuse.

3. "Property Interest" In Enforcement of § 43-21-353

The question before this court is not whether Officer Barr had a duty to report and investigate the child abuse under Mississippi law, but rather whether Priscilla had a procedural due process right pursuant to the Fourteenth Amendment of the United States Constitution to have Officer Barr comply with § 43-21-353.

The court notes from the outset that this question is an open one in the Fifth Circuit. The Fifth Circuit recognized this in *Chrissy v. Mississippi Department of Public Welfare,* 925 F.2d 844, 852 (5th Cir. 1991), a case cited by the plaintiff in this case, when it observed that "[t]he district court did not rule on the due-process claims, there is no Fifth Circuit authority directly on them, and the parties have not fully briefed them on appeal. We therefore intimate no opinion at this time with regard to their merit."

The defendant has cited a decision by the Southern District of Mississippi in *Olivia Y. ex*

*rel. Johnson v. Barbour*, 351 F.Supp.2d 543 (S.D.Miss. 2004) for the proposition that Priscilla does

not have a  procedural due process right in the enforcement of § 43-21-353 because she does not

have a "property" interest in enforcement. The court in *Olivia Y.* concluded that based upon Sixth

and Seventh Circuit interpretations of U.S. Supreme Court precedent, § 43-21-353 did not create

a property interest in individual citizens because the statute did not mandate a substantive outcome,

even though the language mandates reporting and investigation.

       The primary case relied upon by the Southern District was *Tony L. By and Through Simpson*

*v. Childers*, 71 F.3d 1182 (6th Cir. 1995), *cert. denied*, 517 U.S. 1212 (1996). In *Tony L.*, children

by and through their next friend brought a § 1983 action asserting that Kentucky officials violated

their due process rights by not enforcing Kentucky child protection statutes. These statutes included

the requirement that:

> Upon receipt of a report of an abused, neglected or dependent child pursuant to this
> chapter, the cabinet as the designated agency or its delegated representative shall
> initiate a prompt investigation, take necessary action and shall offer protective
> services toward safeguarding the welfare of the child.

*Tony L.*, 71 F.3d at 1187 (citing K.R.S. § 620.050(3)). The Sixth Circuit concluded that "[t]he claim

of a state-created liberty interest fails, however, because no particular substantive outcome is

mandated. The requirement that an investigation be initiated only give plaintiffs an expectation of

receiving a certain process." *Id*. at 1186. The Sixth Circuit based their decision on three U.S.

Supreme Court cases: *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989),

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) (discussed

above), and *Olim v. Wakinekona*, 461 U.S. 238 (1983). These cases were also relied upon by the

Seventh Circuit decision in *Doe v. Milwauke County*, 938 F.2d 499 (7th Cir. 1990), also cited by the

Southern District of Mississippi in *Olivia Y*.

In *Doe*, children through their father and grandparents brought a § 1983 action against the social services department in Wisconsin alleging that their Fourteenth Amendment due process rights were violated when the department failed to initiate an immediate investigation pursuant to a Wisconsin statute, § 48.981(3)(c), which required persons such as law enforcement officers, medical and mental health professionals, and school teachers "having reasonable cause to suspect that a child ... has been abused" to report the abuse to the Department of Social Services and upon receipt of such a report the DSS must "initiate a diligent investigation to determine if the child is in need of protective services" within 24 hours of the report. Wis. Stat. Ann. § 48.981(3)(c). The Seventh Circuit in *Doe* concluded that the substantive due process claim[1] was barred by *DeShaney*, 489 U.S. 189 (1989). The Sixth Circuit concluded that neither did the children have a procedural due process claim since "[o]ne *cannot* have a 'property interest' (or a life or liberty interest, for that matter) in mere procedure because: [p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a claim of entitlement...." *Doe*, 938 F.2d at 503 (citing *Olim*, 461 U.S. at 250-51) (emphasis in original). The Sixth Circuit observed that "[s]ection 48.981 is, in essence, a set of *procedures* that guides Wisconsin counties in their efforts to prevent child abuse. ... But the procedures themselves are not 'benefits' within the meaning of Fourteenth Amendment jurisprudence." *Doe*, 938 F.2d at 503 (emphasis in original).

---

[1]***Procedural Due Process*** - " The minimal requirements of notice and a hearing guaranteed by the Due Process Clauses of the 5th and 14th Amendments, esp. if the deprivation of a significant life, liberty, or property interest may occur." *Black's Law Dictionary* 517 (7th ed. 1999).

***Substantive Due Process*** - "The doctrine that the Due Process Clauses of the 5th and 14th Amendments require legislation to be fair and reasonable in content and to further a legitimate governmental interest." *Id*.

Because the rationales for the aforementioned Sixth and Seventh Circuit opinions were based upon the Supreme Court's decisions in *Olim* and *Thompson,* discussion of those cases follow.

In *Olim v. Wakinekona*, 461 U.S. 238 (1983) a prisoner who had been convicted and imprisoned in Hawaii sued under § 1983 when he was transferred to another prison in California for being a troublemaker. The prisoner alleged that he had been denied procedural due process because the committee that recommended his transfer consisted of the same people who had initiated the hearing, this being a specific violation of the prison regulations, and because the committee was biased against him. The prisoner alleged he had a protected liberty interest for the purposes of the Due Process Clause in the prison officials' procedure for determining whether he should remain in the same state in which he was originally imprisoned. The Court concluded that "a State creates a protected liberty interest by placing substantive limitations on official discretion. ... Hawaii's prison regulations place no substantive limitations on official discretion and thus create no liberty interest entitled to protection under the Due Process Clause." *Id*. at 249. The Court in *Olim* observed that "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Id*. at 249.

In *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989), Kentucky prison inmates brought a § 1983 action alleging that suspension of their visitation privileges without a hearing violated their Fourteenth Amendment due process rights. The Court observed that the issue was whether, for the purposes of the Fourteenth Amendment, the Kentucky prison regulations gave the inmates a liberty interest. 490 U.S. at 459. The Court concluded that "[t]he regulations at issue here ... lack the requisite relevant mandatory language. They stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met." 490 U.S. at 464. In

9

reaching that conclusion, the Court observed that "an individual claiming a protected interest must have a legitimate claim of entitlement to it. Protected liberty interests 'may arise from two sources – the Due Process Clause itself and the laws of the States.'" *Id*. at 460 (internal citation omitted). The Court observed further:

> Stated simply, 'a State creates a protected liberty interest by placing substantive limitations on official discretion' ...A State may do this in a number of ways. Neither the drafting of regulations nor their interpretation can be reduced to an exact science. Our past decisions suggest, however, that the most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision-making,... and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met.

*Id*. at 462.

This court observes that the decisions in *Olim* and *Thompson* involve the prison context, rather than the context of reporting child abuse. These two contexts are inherently different, especially since the prisoner is in the involuntary custody of the state whereas the child who needs someone to report suspicions of abuse is not. In any event, courts such as the Sixth and Seventh Circuit Courts of Appeal have transplanted the conclusions reached in *Olim* and *Thompson* from the prison context into child abuse reporting context. Counsel in this case have cited to no Supreme Court precedent on point regarding whether or not a child has a procedural due process right in having state officials enforce mandatory child abuse reporting requirements. Though the case of *DeShaney* did indeed involve the child abuse context, the plaintiffs in that case argued that they had a substantive, rather than procedural, due process right to be protected by the state from the abuse of private actors. The Court in footnote 2 of the *DeShaney* majority opinion observed:

> Petitioners also argue that the Wisconsin child protection statutes gave Joshua an "entitlement" to receive protective services in accordance with the terms of the statute, an entitlement which would enjoy due process protection against state

deprivation under our decision in *Board of Regents of State Colleges vs. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). ... But this argument is made for the first time in petitioners' brief to this Court: it was not pleaded in the complaint, argued to the Court of Appeals as a ground for reversing the District Court, or raised in the petition for certiorari. We therefore decline to consider it here.

*DeShaney*, 489 U.S. at 195 n. 2. Thus, the question is unanswered in *DeShaney* whether the children had a procedural due process right in enforcement of the anti-child abuse statutes.

However, that question has almost certainly been answered in *Town of Castle Rock, Colorado v. Gonzales*, 125 S.Ct. 2796 (2005). In that case, a court in Colorado issued a woman and her three children a permanent restraining order against her ex-husband. On the back of this restraining order was language tracking a Colorado statute which requires:

> (a) Whenever a restraining order is issued, the protected person shall be provided with a copy of such order. *A peace officer shall use every reasonable means to enforce a restraining order.*
> (b) *A peace officer shall arrest, or, if an arrest would be impractical under the circumstances, seek a warrant for the arrest of a restrained person* when the peace officer has information amounting to probable cause that:
> (I) The restrained person has violated or attempted to violate any provision of a restraining order; and
> (II) The restrained person has been properly served with a copy of the restraining order or the restrained person has received actual notice of the existence and substance of such order.
> (c) In making the probable cause determination described in paragraph (b) of this subsection (3), a peace officer shall assume that the information received from the registry is accurate. *A peace officer shall enforce a valid restraining order whether or not there is a record of the restraining order in the registry.*"

*Gonzales*, 125 S.Ct. at 2805 (citing Colo. Rev. Stat. § 18-6-803.5(3)) (emphasis added by the Supreme Court).

When she found that her children were missing, the woman called the police to report that her ex-husband had violated the restraining order and that their whereabouts were unknown.

Essentially, the police did not take action to enforce the restraining order. Ultimately the ex-husband was killed during a shoot-out with the police. Thereafter the police discovered that the ex-husband had murdered all three children and left them in his vehicle. The mother sued the town of Castle Rock, Colorado under § 1983 "claiming that the town violated the Due Process Clause because its police department had 'an official policy or custom of failing to respond properly to complaints of restraining order violations' and 'tolerate[d] the non-enforcement of restraining orders by its police officers.'" 125 S.Ct. at 2802. The district court granted the town's motion to dismiss under Rule 12(b)(6). The Tenth Circuit reversed, holding that the woman had stated a cognizable due process claim. On rehearing en banc, the Tenth Circuit affirmed that position, "concluding that respondent had a 'protected property interest in the enforcement of the terms of her restraining order' and that the town had deprived her of due process because 'the police never "heard" nor seriously entertained her request to enforce and protect her interests in the restraining order.'" 125 S.Ct. at 2802 (quoting 366 F.3d at 1101, 1117).

Writing for the majority in *Gonzales*, Justice Scalia disagreed with the Tenth Circuit, concluding that the "respondent did not, for the purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband." 125 S.Ct. at 2810. In reaching this conclusion, the Court observed that

> We do not believe that these provisions of Colorado law truly made enforcement of restraining orders *mandatory*. A very well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes. ... [A] true mandate of police action would require some stronger indication from the Colorado Legislature than "shall use every reasonable means to enforce a restraining order" (or even "shall arrest .. or ... seek a warrant")...The dissent, after suggesting various formulations of the entitlement in question, ultimately contends that the obligations under the statute were quite precise: either make an arrest or (if that is impractical) seek an arrest warrant. The problem with this is that the seeking of an arrest warrant would be an

entitlement to nothing but procedure – which we have held inadequate to even support standing, see *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); much less can it be the basis for a property interest. After the warrant is sought, it remains in the discretion of a judge whether to grant it, and after it is granted, it remains within the discretion of the police whether and when to execute it. Respondent would have been assured nothing but the seeking of a warrant. This is not the sort of "entitlement" out of which a property interest is created.

125 S.Ct. at 2805-08. (emphasis in original).

The court notes, however, that the Court in *Gonzales* did observe that it is possible for a state to create a liberty interest as long as a statute like § 43-21-353 not only requires mandatory behavior limiting the discretion of state officials, but also mandates a particular outcome. Specifically, the Court in *Gonzales* counseled:

In light of today's decision and that in *DeShaney*, the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its "substantive" manifestations. This results reflects our continuing reluctance to treat the Fourteenth Amendment as "a font of tort law," *Parratt v. Taylor*, 451 U.S. 527, 544 (1981), but it does not mean States are powerless to provide victims with personally enforceable remedies. Although the framers of the Fourteenth Amendment and the Civil Rights Act of 1871 ... did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented, the people of Colorado are free to craft such a system under state law.

125 S.Ct. at 2810.

Given the authorities discussed above, it appears that in order to give citizens a property interest – *i.e.*, a entitlement pursuant to the Fourteenth Amendment Due Process Clause – in enforcement of § 43-21-353, the Mississippi Legislature would need to amend the statute to mandate a substantive outcome. Pursuant to *Gonzales*, it is likely that to mandate a substantive outcome, the statute would have to take away the discretion of the person who has been given the duty to report by omitting § 43-21-353(1)'s language that "any other person having reasonable cause to suspect that a child is a neglected child or an abused child." The decision in *Gonzales* appears to

require that the statute would need to mandate reporting and investigation of any allegation of child abuse, whether or not the reporter has reasonable cause to suspect the child abuse.

However, since § 43-21-353 does not presently limit the would-be reporter's discretion to decide whether the allegation of child abuse is reasonable, this court concludes that the holding in *Gonzales* renders it beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Indeed, if the Supreme Court held that a person has no procedural due process right in the enforcement of a personalized restraining order issued by a court, one would be hard-pressed to expect the Court to hold that one has a procedural due process right in a statute that calls for reporting and investigation of any reasonable suspicion of child abuse. Therefore, the defendant's motion to dismiss under Rule 12(b)(6) should be granted.

### III. CONCLUSION

Because the plaintiff's § 1983 claim is barred by *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989) and *Town of Castle Rock, Colorado v. Gonzales*, 125 S.Ct. 2796 (2005), and because any state law claims (none of which were clearly advanced in the Complaint) would be barred by the Mississippi Tort Claims Act for failure to comply with that Act's prerequisites, the defendant's motion to dismiss under Rule 12(b)(6) should be granted and the plaintiff's claims should be dismissed with prejudice. Accordingly, an Order shall issue forthwith,

**THIS DAY** of December 7, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE